UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANNETTE WILLIAMS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-02245 |
| | § | |
| TEXAS CHILDREN'S HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court is the defendant's, Texas Children's Hospital, (the "defendant"), motion for summary judgment (Dkt. No. 14). The plaintiffs, Annette Williams ("Williams") and Victoria Eaglin ("Eaglin") (collectively, the "plaintiffs"), have filed a response in opposition to the motion (Dkt. No. 22) to which the defendant has filed a reply in support of its motion (Dkt. No. 29). After having carefully considered the motion, response, reply, the record and the applicable law, the Court determines that the defendant's motion for summary judgment should be **GRANTED**.

### II. FACTUAL BACKGROUND

Both plaintiffs, African-American females, were originally hired by the Baylor College of Medicine as patient access representatives (PARs). The primary role of a PAR is greeting and checking-in patients at the front desk. Williams was hired on May 22, 2006 and Eaglin was hired on July 22, 2008. They were both assigned to the cardiology department located in the West Tower, on the 20th floor. Both plaintiffs began working for the defendant in October 2013, when the department transitioned over to the defendant's ownership and management. In addition to the plaintiffs there was another PAR, also an African-American female. The three

PARs worked different shifts. Eaglin worked the 6:00 a.m. to 2:30 p.m. shift; Williams worked the 7:30 a.m. to 4:30 p.m. shift; and the third PAR worked the 9:00 a.m. to 5:00 p.m. shift.

On June 12, 2015, Eaglin clocked in at 6:04 a.m. On the same day, Williams was scheduled to start her workday shift at 7:30 a.m. Timekeeping records indicate that Williams clocked in at 7:32 a.m. An employee of the defendant, however, reported to the plaintiffs' supervisor, Danielle Williams, that Williams was seen on the employee shuttle between 7:50 a.m. and 8:00 a.m. Danielle Williams investigated the matter by reviewing the timekeeping records to determine when Williams clocked in and when she was scheduled to start work. Danielle Williams also requested parking logs and video footage of the front desk.

At the conclusion of her investigation Danielle Williams determined that Eaglin had clocked Williams into the timekeeping system. According to Williams she did not ask anyone to log her into the system and Eaglin denied participation. Dannielle Williams recommended termination of the plaintiffs for violation of Texas Children's Hospital's time keeping policies. Danielle Williams shared her findings with Enrique Gonzalez, Director Patient Access Registration, the final decision maker. On July 24, 2015, the defendant terminated the plaintiffs for violating the defendant's timekeeping policies.

On July 21, 2017, the plaintiffs filed the instant action against the defendant alleging discrimination based on race in violation of both Title VII and 42 U.S.C. § 1981.[1]

---

[1] The Court notes that both plaintiffs report discrimination based on retaliation in addition to race on their EEOC Charge of Discrimination forms. (Dkt. Nos. 13-27 and 13-29). However, the plaintiffs' complaint does not include a cause of action on the basis of retaliation. Therefore, the Court does not address retaliation.

### III. LAW APPLICABLE TO CASE

#### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the

existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

**B. Title VII**

Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In employment discrimination cases, such as the one *sub judice*, discrimination under section 1981 may be

proven "through direct or circumstantial evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). In a case where a plaintiff produces no direct evidence of discriminatory intent, the Court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Under the *McDonnell Douglas* burden-shifting framework:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (emphasis, citations and internal quotation marks omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted). "Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Thus, "a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether the employer's stated reasons was not what actually motivated the employer; and, (2) creates a reasonable inference that race or religion was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and*

*Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996)).

Using the *McDonnell Douglas* framework to establish race or religious discrimination under section 1981, a plaintiff must demonstrate that she: "(1) belongs to a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of the protected class or, in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

### IV.  ANALYSIS AND DISCUSSION

The plaintiffs allege in their complaint that the defendant violated both Title VII and 42 U.S.C. § 1981, by discriminating against them based on race. (Dkt. No. 1). In pursuing a Title VII discrimination claim, the plaintiff must file an EEOC Charge within 300 days of the alleged discriminatory action or practice. The defendant argues however, that because Williams, filed her EEOC charge on May 1, 2016, all alleged discriminatory acts that occurred before July 6, 2015 are time barred as a matter of law. The defendant further contends that Williams cannot premise her race discrimination claim on the denial of her application to the Women's Pavilion or the alleged acts or comments by supervisors. As for Eaglin, the defendant claims that since she filed her EEOC Charge on April 6, 2016, her claim cannot be premised on the denial of her application to be transferred to another clinic that was made more than 300 days before the charge. The plaintiffs explain that these incidents in themselves do not rise to the level of actional conduct, but they are telling with regard to how the defendant handles issues of race.

The defendant maintains that the plaintiffs were not terminated due to their race and moreover cannot satisfy the fourth prong of the *prima facie* case of a Title VII race claim. Under the fourth prong the plaintiffs must show that they were treated less favorably than other similarly situated employees outside of their protected class. The defendant contends that the plaintiffs have not identified any similarly situated employee who was treated more favorably under nearly identical circumstances. The defendant adds that the plaintiffs have not and cannot, identify a single similarly situated non-African-American PAR who engaged in the same timekeeping and conduct violations, that was not terminated. Further, according to the defendant, it has not replaced the plaintiffs.

Assuming however, that the plaintiffs establish the *prima facia* case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. *McCoy v. City of Shreveport,* 492 F.3d 551, 557 (5th Cir. 2007). The defendant has done so. The defendant maintains that the plaintiffs' were terminated because they violated Texas Children's timekeeping policy when Eaglin clocked into the timekeeping system on behalf of Williams. The defendant maintains that Enrique Gonzalez, terminated the plaintiffs' employment because he concluded that: (1) Williams had asked Eaglin to clock her into the timekeeping system; (2) Eaglin did clock her into the system; (3) efforts to falsify time records violated the payroll and timekeeping policy; and (4) efforts to misrepresent time records violated the Employee Conduct Policy.

Since the defendant has offered a legitimate reason for the terminations, the burden shifts back to the plaintiffs to raise a genuine issue of material fact as to whether the employer's proffered reason is merely a pretext for discrimination. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation

is false or 'unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace v. Methodist Hospital System*, 271 F.3d 212, 219 (5th Cir. 2001). Further, "the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id*.

According to the plaintiffs, the defendant's contentions that the alleged violation led to the terminations are incredible. The plaintiffs further argue that the employees involved in the investigation were motivated by racial animus. To show racial animus in the workplace the plaintiffs allege that several incidents occurred during their tenure as PARs. For example, Williams, states that she was given a "hard time" when she requested leave for her mother's surgery. Nonetheless, she was permitted to take the leave she requested. According to Williams, a supervisor discriminated against her by attempting to block her from taking time off to have surgery. However, the request for leave was approved. When asked if her supervisor made derogatory or racial comments to her about African-American people, she replied, " no."

In 2015, the plaintiffs' supervisor implemented a new policy requiring that two PARs be at the desk at all times to receive patients. Williams argues that the policy was discriminatory because prior to the supervisor's tenure it was standard practice to have only one PAR at the front desk at times. Williams was written up for violating the policy. However, when asked if she believed that the write up was discrimination against her based on her race, she replied, "no."

Eaglin reports she was offended when a supervisor attended her mother's funeral and asked her when she would be returning back to work. However, she was not sure if the supervisor had attended other funerals of relatives of other employees and made a similar inquiry. Eaglin also alleges incident where a supervisor flipped her hair and asked her how much she paid for the hair. On another occasion, Eaglin claims that other employees referred to her and

Williams as, "the black girls." She further reports that a supervisor asked her if she ate watermelon and chicken every holiday. Williams reports that during her tenure a supervisor told her that they needed more Hispanics at the front desk and that she could be replaced. In addition, another employee told her, "You know they want to replace you all with a Hispanic, so you all better be on you-alls Ps and Qs."

The Court is not persuaded that the incidents or comments reported reflect racial animus and even if they do none of the comments were made by a decision maker. Enrique Gonzalez's decision was based on the investigation by the plaintiffs' supervisor. He reviewed the timekeeping records and work schedule and terminated the plaintiffs. While the plaintiffs' argue that the defendant's investigation is a sham and coverup for pretext, they fail to discredit the timekeeping records, parking records and video footage stills that show that Williams was not at work when she was clocked in.

The plaintiffs have not produced substantial evidence indicating that the proffered legitimate reason is a pretext for discrimination. Title VII provides no protection from arbitrary or even erroneous personnel decisions, only those unlawfully motivated. *Bryant v. Compass Group USA, Inc.,* 413 F.3d 471, 478 (5th Cir. 2005).

## V. CONCLUSION

Based on the foregoing analysis and discussion, the defendant's motion for summary judgment is **GRANTED**.

It is so **ORDERED**.

SIGNED on this 8th day of March, 2019.

_____
Kenneth M. Hoyt
United States District Judge